UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 18-cr-250 (ECT) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Justin Thomas Chapman, | |
| Defendant. | |

---

Manda M. Sertich, Alexander D. Chiquoine, and Sarah E. Hudleston, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Manvir K. Atwal, Office of the Federal Defender, Minneapolis, MN, for Defendant Justin Thomas Chapman.

---

This matter is before the Court on the Government's motion for a determination of restitution. ECF No. 100. Defendant Justin Thomas Chapman previously pleaded guilty to distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). ECF Nos. 55, 56. In his plea agreement, Chapman agreed that restitution is mandatory in this case and that he could be required to "make restitution to any victim of his offenses, regardless of whether the victim was named in the Indictment, the count of conviction, or [the Plea] Agreement." ECF No. 56 ¶ 9. On September 26, 2019, Chapman was sentenced to a 180-month term of imprisonment followed by a 10-year term of supervised release. ECF No. 79. A determination of the amount of restitution was

deferred.[1]  ECF No. 79 at 6.  After sentencing, defense counsel attempted to resolve the issue of restitution with at least some of the thirteen victims who requested restitution in this case.  *See* ECF Nos. 87, 94, 95.  Chapman ultimately reached an agreement with five of the victims—"Pia," "Ava," "Mya," "Henley," and "Maureen"[2]—that he would pay each of them $1,000, and the Government has joined in that agreement.  ECF No. 104.  The Government recommends restitution awards in the amount of $1,000 for four other victims—"Cindy," "Emily," "Andy," and "Jenny"—and $3,000 for the remaining four—"Jane," "Erika," "Tori," and "Raven."  ECF No. 100 at 9.  Chapman asks that restitution in the amount of $1,000 be ordered for all eight of the remaining victims.  The Government's motion will be granted, and restitution will be ordered as set forth below.

---

[1]  "An order of restitution under [18 U.S.C. § 2259] shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2).  Section 3664(d)(5) provides that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." However, the Supreme Court has held that "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."  *Dolan v. United States*, 560 U.S. 605, 608 (2010).  Not only did Chapman agree that restitution was mandatory in his plea agreement, he also was put on notice at his sentencing hearing that restitution would be ordered, Sentencing Tr. at 24, 44 [ECF No. 89]; *see* ECF No. 79 at 6, and he does not dispute the propriety of ordering restitution now, *see* ECF No. 103.  *See United States v. Thunderhawk*, 860 F.3d 633, 636 (8th Cir. 2017).

[2]  The victims will be referred to by the pseudonyms chosen by them for use in restitution requests.  *See* Gov't Mot. at 1 n. 1 [ECF No. 100]; *see* 18 U.S.C. § 3509(d).

I

A court must order restitution if a defendant is convicted of a child pornography offense. 18 U.S.C. § 2259(a), (b)(4).[3] "A court may not decline to issue an order under [§ 2259] because of . . . the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." *Id.* § 2259(b)(4)(B)(i). Each victim is entitled to the "full amount of [his or her] losses," including "any costs incurred by the victim" for:

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

*Id.* § 2259(b)(1), (3)(A)–(F).

---

[3] All citations to § 2259 are to the version of the statute that was in effect at the time of Chapman's offenses. After Chapman was charged in this case in October 2018, § 2259 was amended pursuant to The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299, 132 Stat. 4383 (Dec. 7, 2018). The amendments are not retroactive. *See* 18 U.S.C. § 2259B(d) ("It is the sense of Congress that individuals who violate this chapter prior to the date of the enactment of the [Act], but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed."); *United States v. Monzel*, 930 F.3d 470, 476 n.1 (D.C. Cir. 2019); *United States v. Erickson*, 388 F. Supp. 3d 1086, 1088 n.1 (D. Minn. 2019); *United States v. Block*, No. CR 17-50068-JLV, 2020 WL 1322067, at *2 (D.S.D. Mar. 20, 2020).

In *Paroline v. United States*, the Supreme Court established a framework for determining an appropriate award of restitution under § 2259 for victims of child-pornography offenses. 572 U.S. 434 (2014). "[W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."[4] *Id.* at 458. "[D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses . . .), then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* at 460. A district court should look to the following factors as "rough guideposts":

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

---

[4] The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 codified this holding and set a mandatory minimum amount of restitution of $3,000, which is not applicable to Chapman. *See* 18 U.S.C. § 2259(b)(2)(B) (2021); *supra* note 3.

*Id.* The Government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" by preponderance of the evidence. 18 U.S.C. § 3664(e); *see Paroline*, 572 U.S. at 462; *United States v. Bordman*, 895 F.3d 1048, 1057 (8th Cir. 2018).

II

"[T]he *Paroline* framework is very difficult—if not impossible—to apply in practice." *United States v. Erickson*, 388 F. Supp. 3d 1086, 1088–89 & n.2 (D. Minn. 2019) (collecting cases). Indeed, the Supreme Court itself recognized that the *Paroline* approach "involves discretion and estimation," and that courts "can only do their best to apply the statue as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others." *Paroline*, 572 U.S. at 462. In particular, "*Paroline*'s suggested 'starting point'—'the amount of the victim's losses caused by the continuing traffic in the victim's images'—is nearly impossible for courts to reliably ascertain" because it "requires a court to 'disaggregate' the harm caused to the victim by *the sexual abuse* from the harm caused to the victim by the *trafficking of the images of the sexual abuse*." *Erickson*, 388 F. Supp. 3d at 1089 (quoting *Paroline*, 572 U.S. at 460); *see Bordman*, 895 F.3d at 1058–59 (rejecting appellant's argument that "the district court abused its discretion by failing to disaggregate the harm caused by the initial abuse from the harm that his later possession caused" because that would transform the disaggregation factor from a "rough guidepost" into a "rigid

5

formula"). There are similar challenges with respect to some of the additional factors for consideration identified in *Paroline*. Though there may be "anecdotal evidence" in the record "about the popularity of a particular child-pornography series . . . , there is simply no way for any judge or attorney to make a 'reasonable prediction[]' about 'the broader number of offenders involved' or 'the number of future offenders likely to be caught and convicted[.]'" *Erickson*, 388 F. Supp. at 1089 (quoting *Paroline*, 572 U.S. at 460).

Other *Paroline* factors are easier to ascertain and apply, such as whether the defendant was connected to the production of the images, the extent to which the defendant reproduced or distributed images of the victim, and the number of images or videos the defendant possessed of the victim. In this case, there is no evidence that Chapman was connected to the production of the videos and images that he traded and possessed. In his plea agreement, Chapman admitted that he moderated a child pornography chatroom through which he shared child pornography in his possession but the extent of his distribution activities is unclear. ECF No. 56 ¶ 2. Reports from the National Center for Missing and Exploited Children show the number of images and videos Chapman possessed of each victim. Gov't Ex. 11 [ECF No. 101-10].

On the whole, these factors tend to make Chapman relatively less culpable than other offenders in contributing to these victims' losses. *See Erickson*, 388 F. Supp. 3d at 1090. As explained in further detail below, Chapman will be ordered to pay $1,000 to Cindy, Emily, Andy, and Jenny and $3,000 to Jane, Erika, Tori, and Raven.[5] These awards

---

[5] The stipulation in which Chapman agrees to pay Pia, Ava, Mya, Henley, and Maureen $1,000 each will be accepted. *See* ECF No. 104.

are "reasonable and circumscribed" in light of the relevant factors and commensurate with restitution awards in other cases under like circumstances (including in cases involving some of the same victims). *Paroline*, 572 U.S. at 459; *see Bordman*, 895 F.3d at 1057 and n.2; *Erickson*, 388 F. Supp. 3d at 1088, 1090–95; *United States v. Debruzzi*, No. 17-cv-160 (DWF/KMM), 2019 WL 6975457, at *3 (D. Minn. Dec. 20, 2019).

### A

Chapman possessed two images of Cindy. Gov't Ex. 11 at 79.[6] Cindy estimates the total amount of her documented economic losses to be $1,608,707.58, not including "necessary ongoing and future counseling and educational expenses." Gov't Ex. 2 at 1 [ECF No. 101-1]. It appears that some portion of these expenses may have been incurred prior to Chapman's offense conduct. *See id.* at 1–2; *Erickson*, 388 F. Supp. 3d at 1091 (excluding from Cindy's restitution request in that case medical expenses incurred prior to when the defendant's conduct started). Cindy requests $8,000 in restitution in this case. Gov't Ex. 2 at 8. There is no evidence of how many outstanding restitution orders there are for Cindy or how much restitution she has received to date, but Cindy notes that she received "hundreds of notifications" based on an "unending stream of newly-discovered offenders" when, for "a short time in college," she opted to receive notifications from the Government about prosecutions in which images of her were identified. *Id.* at 3, 12. In light of the possibility of a substantial number of offenders, past and future, and the

---

[6] Citations to the exhibits submitted by the Government refer to the pagination in the ECF stamp at the top of each page.

extremely limited causal role Chapman played in Cindy's losses by possessing just two images, an amount of $1,000 is appropriate.

B

Chapman possessed one image of Emily. Gov't Ex. 11 at 340. The amount of Emily's total losses incurred is not entirely clear, but the cost of her lifelong mental health treatment is estimated to be $545,500. Gov't Ex. 10 at 6 [ECF No. 101-9]. Emily seeks $15,000 in restitution in this case. *Id.* at 1. Emily details the re-victimization she has experienced as a result of the continued circulation of images of her, but there is no evidence as to how widely those images have been distributed, how many outstanding restitution orders there are, or how much Emily has recovered through restitution to date. *See id.* at 3–6. Chapman's causal role in Emily's losses is extremely limited in that he possessed just one image of Emily. An amount of $1,000 is appropriate.

C

Chapman possessed one video of Andy. Gov't Ex. 11 at 307. Andy estimates the total amount of his losses to be $2,121,963, which includes $267,038 for future psychological counseling costs and $1,854,925 for future lost income. Gov't Ex. 1 at 2 [ECF No. 101]. He seeks $25,000 in this case as well as $33,415 in expenses incurred to prepare his restitution request. *Id.* at 2–3. Andy reports that the images of him are "among the most widely distributed child pornography series in the world" and that law enforcement officers cannot estimate the total number of images and videos because there are so many. *Id.* at 5 (footnote omitted). This suggests that the number of past criminal offenders and future defendants may be great. Andy does not say how much restitution he

8

has received to date but, as of February 2019, noted that he "ha[d] received restitution in only a tiny number of cases in which he ha[d] been named a victim, in large part due to the fact that it was too late in the criminal process to ask for restitution by the time" he retained counsel. *Id.* at 20. Nonetheless, in possessing just one video of Andy among the many reportedly in circulation, Chapman's role in causing Andy's losses is extremely limited. An amount of $1,000 is therefore appropriate.

D

Chapman possessed two images and four videos of Jenny. Gov't Ex. 11 at 169. The total amount of losses Jenny has incurred is not fully clear, but an expert report submitted with her restitution request estimates the average cost of future treatment for Jenny to be $100,179 and a net loss of earning capacity somewhere between $1,653,793 and $2,902,427. Gov't Ex. 4 at 80 [ECF No. 101-3]. Jenny requests $3,000 in restitution in this case. *Id.* at 2. The "Jenny" series is reportedly "widely trafficked" and "notorious for its graphic content and sadomasochistic depictions," suggesting the existence of a substantial number of potential defendants. *Id.* There is no evidence as to how many outstanding restitution orders there are or how much Jenny has received in restitution to date. Considering all of this information together, including Chapman's limited causal role, an amount of $1,000 is appropriate.

E

Chapman possessed ten images and two videos of Jane. Gov't Ex. 11 at 78. Jane estimates that her potential lifetime losses may ultimately be "as high as $7,749,603.00." Gov't Ex. 3 at 5 [ECF No. 101-2]. Jane requests "no less than $3,000" in restitution in this

9

case. *Id.* at 2. Jane states that "[k]nown past and current investigations" of individuals who possessed and distributed images of her span at least twenty states and perhaps beyond. *Id.* at 2–3, 23. Jane does not say how many outstanding restitution orders there are or how much restitution she has received to date. Chapman's causal role is somewhat greater with respect to Jane than the previous four victims given the increased number of images and videos found in his possession. An amount of $3,000 is therefore appropriate.

F

Erika and Tori submitted a joint request for restitution. Chapman possessed seventy-five images and two videos of Erika and thirty images and three videos of Tori. Gov't Ex. 11 at 249–53. As of January 2019, they noted that the full extent of their losses had not yet been determined because they had yet to complete forensic examinations, estimated to cost $20,500 each. Gov't Ex. 5 at 1–2 [ECF No. 101-4]. Erika and Tori each request "no less than $3,000" in restitution in this case. *Id.* at 2. There is no evidence regarding how widely the images of Erika and Tori have been circulated, the number of outstanding restitution orders, or the amount of restitution they have already received. However, Chapman's causal role is greater with respect to these two victims as he possessed a total of 110 images and videos from this series. An amount of $3,000 each is appropriate.

G

Chapman possessed three images and eight videos of Raven. Gov't Ex. 11 at 334. As of January 2019, Raven noted that the full extent of her losses had not yet been determined because she had yet to complete a forensic examination, estimated to cost

10

$20,500. Gov't Ex. 6 at 1–2 [ECF No. 101-5]. Raven seeks "no less than $3,000" in restitution in this case. *Id.* at 2. Raven states that her images have been distributed "worldwide." *Id.* at 2. There is no evidence regarding any outstanding restitution orders or the amount of restitution she has received to date. Based on the available information and the extent of Chapman's causal role, an amount of $3,000 is appropriate.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. The Stipulation Concerning Restitution [ECF No. 104] with respect to victims Pia, Ava, Mya, Henley, and Maureen is **ACCEPTED**.

2. The Government's Motion for Determination of Restitution [ECF No. 100] with respect to victims Cindy, Emily, Andy, Jenny, Jane, Erika, Tori, and Raven is **GRANTED**.

3. Defendant Justin Thomas Chapman shall pay restitution in the amount of $21,000.000, without interest, to be distributed as follows:

|   | Victim | Series | Attorney Information for Payment | Restitution Amount |
|---|--------|--------|----------------------------------|--------------------|
| 1. | Pia | Sweet Sugar | Deborah A. Bianco, P.S., in trust for Pia<br>Attorney at Law<br>14535 Bellevue-Redmond Road<br>Suite 201<br>Bellevue, Washington 98007 | $1,000.00 |
| 2. | Ava | Sweet Sugar | Deborah A. Bianco, P.S., in trust for Ava<br>Attorney at Law<br>14535 Bellevue-Redmond Road<br>Suite 201<br>Bellevue, Washington 98007 | $1,000.00 |

| | | | | |
|---|---|---|---|---|
| 3. | Mya | Sweet Sugar | Deborah A. Bianco, P.S., in trust for Mya<br>Attorney at Law<br>14535 Bellevue-Redmond Road<br>Suite 201<br>Bellevue, Washington 98007 | $1,000.00 |
| 4. | Henley | BluePillow1 | Deborah A. Bianco, P.S., in trust for Henley<br>Attorney at Law<br>14535 Bellevue-Redmond Road<br>Suite 201<br>Bellevue, Washington 98007 | $1,000.00 |
| 5. | Maureen | Lighthouse1 | Deborah A. Bianco, P.S., in trust for Maureen<br>Attorney at Law<br>14535 Bellevue-Redmond Road<br>Suite 201<br>Bellevue, Washington 98007 | $1,000.00 |
| 6. | Cindy | Cindy | Cusack, Gilfillan & O'Day, LLC, in trust for Cindy<br>415 Hamilton Boulevard<br>Peoria, Illinois 61602 | $1,000.00 |
| 7. | Emily | Tightsngold | Tanya Hankins, in trust for Emily<br>Law Office of Erik Bauer<br>215 Tacoma Ave. S.<br>Tacoma, WA 98402 | $1,000.00 |
| 8. | Andy | Sponge Bob | Marsh Law Firm PLLC<br>ATTN: Andy<br>548 Market St. #65135<br>San Francisco, CA 94104-5401 | $1,000.00 |
| 9. | Jenny | Jenny | Marsh Law Firm PLLC<br>ATTN: Jenny<br>PO Box 4668 #65135<br>New York, NY 10163-4668 | $1,000.00 |
| 10. | Jane | Cinderblock Blue | Marsh Law Firm PLLC<br>ATTN: Jane<br>PO Box 4668 #65135<br>New York, NY 10163-4668 | $3,000.00 |
| 11. | Erika | PinkHeart Sisters | Marsh Law Firm PLLC<br>ATTN: Erika<br>PO Box 4668 #65135<br>New York, NY 10163-4668 | $3,000.00 |

| 12. | Tori | PinkHeart Sisters | Marsh Law Firm PLLC ATTN: Tori PO Box 4668 #65135 New York, NY 10163-4668 | $3,000.00 |
| --- | --- | --- | --- | --- |
| 13. | Raven | Teal&Pink Princess | Marsh Law Firm PLLC ATTN: Raven PO Box 4668 #65135 New York, NY 10163-4668 | $3,000.00 |

4. Chapman shall make restitution payments to the Clerk of Court, United States District Court, District of Minnesota, Minneapolis, Minnesota. The Clerk shall make appropriate payment to the respective trust accounts of counsel for the victims outlined in paragraph 3 of this Order.

5. Chapman shall notify the Clerk of Court and the United States Attorney's Office, Financial Litigation Unit, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, within thirty (30) days of (a) any change of name, residence, or mailing address, and (b) any material change in economic circumstances that affects his ability to pay restitution.

6. Until such time as the full restitution amount is paid, and while Chapman is incarcerated, he must make quarterly payments of no less than $25, if he is working non-UNICOR; if he is working UNICOR, he must pay no less than 50 percent of his monthly earnings toward his restitution obligation.

7. If Chapman has not satisfied the full restitution obligation prior to his release from prison, beginning thirty (30) days after his release from prison, Chapman must make payments of at least $25 per month toward his restitution obligation.

8. No delinquent or default penalties shall be imposed, except upon further order of the Court; and

9. The Sentencing Judgment [ECF No. 79] shall be amended pursuant to the terms of this Order.

Dated:  August 31, 2021                              s/ Eric C. Tostrud
                                                                           Eric C. Tostrud
                                                                           United States District Court